**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

Teresa Combs,

      Plaintiff,

v.

      Case No. 2:08cv102

Reliance Standard Life Insurance
Company

      Judge Michael H. Watson

      Defendant.

## OPINION AND ORDER

Before the Court are the following:

1.    The October 22, 2008 Motion of Plaintiff Teresa Comb (hereinafter

"Plaintiff") for Judgment on the Administrative Record (Doc. 11).

Defendant Reliance Standard Life Insurance Company (hereinafter

"Defendant") filed a Memorandum in Response on November 24, 2008

(Doc. 14).

2.    The October 22, 2008 Motion of Defendant for Summary Judgment (Doc.

12). Plaintiff filed a memorandum in Response on November 25, 2008

(Doc. 15).

Plaintiff brings this action against Defendant under the Employment Retirement

Income Security Act of 1974 (hereinafter "ERISA"), 29 U.S.C. § 1132(a)(1)(B), for

denial of disability benefits. For the following reasons, Defendant's Motion for

Summary Judgment is hereby **DENIED** and Plaintiff's Motion for Judgment on the

Administrative Record is hereby **DENIED**.

## I.    FACTS

### A.    The Plan

Plaintiff was employed by Taft, Stettinius, & Hollister (hereinafter "Taft") as a

Personal Administrator beginning in August 1997. Plaintiff participated in Taft's

disability plan (hereinafter the "Plan") which is issued and administered by Defendant.

The Plan is governed by ERISA and both sides agree it is a discretionary plan which

allows the administrator to make decisions about the meaning and implementation of

the Plan.

The Plan defines "Totally Disabled" and "Total Disability" as follows:

. . . as a result of an Injury or Sickness:

(1)    during the Elimination Period and for the first 36 months for which a
       Monthly Benefit is payable, an Insured cannot perform the material duties
       of his/her regular occupation;

    (a)    "Partially Disabled" and "Partial Disability" mean that as a result of
       an Injury or Sickness an Insured is capable of performing the
       material duties of his/her regular occupation on a part-time basis or
       some of the material duties on a full-time basis. An Insured who is
       Partially Disabled will be considered Totally Disabled, except during
       the Elimination Period;

    (b)    "Residual Disability" means being Partially Disabled during the
       Elimination Period. Residual Disability will be considered Total
       Disability; and

(2)    after a Monthly Benefit has been paid for 36 months, an insured cannot
       perform the material duties of any occupation. Any occupation is one that
       the Insured's education, training or experience will reasonably allow. We
       consider the Insured Totally Disabled if due to an injury or Sickness he or
       she is capable of only performing the material duties on a part-time basis
       or part of the material duties on a Full-time basis.

The Elimination Period is defined as the 180 days following the initial disability during which no benefits are paid.

B.    Plaintiff's Medical Problems and Disability Application

Plaintiff's last day of work for Taft was January 24, 2003.[1] Plaintiff claims she was no longer able to work due to severe back pain which she graded as a ten out of ten on the pain scale. Plaintiff has a history of back problems, including surgery on her lower back in 1985.

On July 24, 2003, the Elimination Period was satisfied and Plaintiff began to receive long-term disability benefits.

Plaintiff had surgery on her back in August 2003. Additionally, Plaintiff's medical history includes a diagnosis of fibromyalgia. This is separate and considered unrelated to her lower back trouble. The 2003 surgery resolved her fibromyalgia pain but did not eliminate the back pain unassociated with the disease.

In August 2004, Plaintiff saw Dr. Jeffrey R. Blood, a physical medicine and rehabilitation specialist. In his report, Dr. Blood indicated Plaintiff had various spinal defects, including a bulging disk, an annular tear, and a disk protrusion. Dr. Blood also noted Plaintiff was unwilling to try physical therapy to reduce her back pain because she claimed to have tried it in the past without success.

On November 22, 2004, Defendant sent Plaintiff a letter notifying her of the termination of her long-term disability benefits because she was no longer disabled.

---

[1]The Elimination Period began running on January 25, 2003 with respect to Plaintiff.

C. <u>Plaintiff's Appeal</u>

Plaintiff appealed the termination of benefits. In January 2006, at Defendant's request, Plaintiff underwent a two day functional capacity evaluation (hereinafter the "Evaluation"). The Evaluation found Plaintiff was capable of performing most parts of her job for a limited amount of time each day. Plaintiff, however, was deemed incapable of performing most of the functions of her job for an entire eight hour day.

On February 15, 2006 Plaintiff's file and Evaluation were reviewed by David E. Lembach, M.Ed., LPC, CRC, CDMS, a vocational specialist employed by Defendant. He determined Plaintiff could perform her regular duties at Taft and was no longer disabled.

On February 23, 2006, Defendant informed Plaintiff the termination was upheld.

D. <u>Plaintiff's Social Security Application</u>

The evidence does not show that Defendant required Plaintiff to apply for Social Security disability benefits once she was granted disability payments by Defendant. However, Defendant encouraged Plaintiff to apply for Social Security in a letter listing the advantages of having such benefits.

The Social Security Administration (hereinafter "SSA") denied Plaintiff's initial application and subsequent appeal for benefits. The SSA suggested that, even though Plaintiff was too disabled to work her previous jobs, it was possible that she could pursue another occupation as long as the work was "light" and "sedentary" in nature.

II. **STANDARD OF REVIEW**

The standard of review for ERISA claims on appeal is *de novo*. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). If, however, the plan gives the

administrator discretion to decide the meaning of the terms of the plan and to determine benefits, then the arbitrary and capricious standard is used. *Glenn v. Metlife*, 461 F.3d 660, 665 (6th Cir. 2006), affirmed sub nom. *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343 (2008)[2]. This requires an administrator's decision be upheld "if it is the result of a deliberate, principled, reasoning process and if it is supported by substantial evidence." *Id.* (citing *Baker v. United Mine Workers of Am. Health & Ret. Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991)). Both parties agree the standard of review for this case is arbitrary and capricious because the plan vests the administrator with discretion.

This standard of review does not mean that the Court defers completely to the decision of the plan administrator. *Id.* The Sixth Circuit determined there are several factors that must be taken into account when reviewing a decision regarding benefits: the existence of a conflict of interest, consideration of a determination made by the Social Security Administration, and the quality and quantity of medical evidence. *Delisle v. Sun Life Assurance Co. of Canada*, 558 F.3d 440, 444 (6th Cir. 2009).

The Supreme Court holds that a conflict of interest should be taken into consideration when determining if an administrator's decision was arbitrary and capricious. *Metropolitan Life*, 128 S. Ct. at 2350. The Court determined that such a conflict exists if the plan administrator is also the insurance company responsible for paying out benefits. *Id.* at 2349.

_____

[2] Hereinafter, the Court will refer to *Glenn v. Metlife*, 461 F.3d 660, 665 (6th Cir. 2006) as "*Glenn*" and *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343 (2008) as "*Metropolitan Life.*"

The weight the conflict of interest is given in determining if a decision was arbitrary depends on the facts of the case itself. *Id.* at 2351. It will weigh more heavily if the circumstances suggest that it had a high likelihood of affecting the benefits decision. *Id.* In cases where it seems that an administrator has taken steps to decrease the likelihood of a conflicted decision, the conflict will be given less weight. *Id.*

When determining if a benefits decision was arbitrary, a court gives weight to the decision of the SSA. *Delisle*, 558 F.3d at 445. A decision to award benefits by the SSA, however, is not dispositive when it comes to an ERISA insurance plan because the terms of the plan could be different than what SSA requires. *Id.* It is a significant factor to be considered, particularly when a plan administrator: (1) encourages an applicant to apply for Social Security, (2) benefits financially from the receipt of Social Security, and (3) does not explain why it has reached a different outcome than the SSA. *Id.* at 446 (citing *Bennett v. Kemper Nat'l Servs.*, 514 F.3d 547, 554 (6th Cir. 2008)). If all of these factors are present then they weigh in favor of the decision being arbitrary and capricious. *Id.*

Any decision a court comes to regarding the denial of benefits must include the examination of the quality and quantity of the medical evidence. *Delisle*, 558 F.3d at 446. Without this review, courts would be doing nothing more than rubber stamping any decision made by the administrator. *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003).

## III.   ANALYSIS

### A.   Conflict of Interest

There is a conflict of interest in this case. As in the *Glenn* case, Defendant is the administrator and the insurer of the Plan offered to Taft employees. There is an inherent conflict when the administrator and insurer are the same company because it is logically in the company's best interest to pay out as few benefits as possible, thereby saving itself a significant amount of money.

There is some evidence in the record to show that Defendant attempted to ensure the fairness of its decisions. In the letter Plaintiff received denying her appeal of the termination of her benefits, Defendant states that "this review has been conducted separately from the individual(s) who made the original decision to terminate benefits." There is little else in the record, however, to show how this conflict of interest affected Defendant's decision making process. As such, the Court cannot make a determination on whether the conflict played a significant role in the decision to terminate Plaintiff's benefits. See *Metropolitan Life*, 128 S. Ct. at 2352 (finding that the Sixth Circuit properly gave more weight to the determination of the SSA in deciding a benefits case because there was little in the record to determine if the conflict of interest played a significant role in the denial of benefits).

### B.   The Determination of the SSA

The SSA twice denied Plaintiff disability benefits. Both denial letters stated that Plaintiff was still capable of doing some light, sedentary work and therefore could not be considered disabled. The SSA suggested that if Plaintiff could not do the job she had at

Taft, it was still possible for her to find another job for which she was qualified and physically capable of doing.

The letter Plaintiff received from the SSA denying her first application for disability benefits also contains language that states that not every definition of "disability" is the same, particularly between the private sector and the government. Any decision made by the SSA is not binding on Defendant and is not determinative of whether or not Plaintiff is entitled to disability benefits from her insurer.

Although the SSA's decision is not binding, it does carry some weight. Defendant reached the same conclusion as the SSA in regards to Plaintiff's disability, which means that the arbitrary and capricious factors do not play as significant a role as they could. Additionally, even though Defendant did encourage Plaintiff to apply for Social Security disability benefits, there is no evidence in the record regarding whether or not Defendant stood to benefit financially if Plaintiff received Social Security. As such, this factor is not determinative..

C.    Medical Evidence

The Court concludes there is sufficient medical evidence to show that Plaintiff is not totally disabled, using either the Social Security definition or the language of the Plan. However, the record demonstrates Plaintiff may be partially disabled as defined by the Plan. The Plan states that anyone who is partially disabled is "capable of performing the material duties of his/her regular occupation on a part-time basis or some of the material duties on a full-time basis." Under the Plan, an insured who is partially disabled will be considered totally disabled.

In April 2003, Plaintiff's orthopedist, Dr. Gerard Papp, opined that Plaintiff was able to perform work but that she must only do so in a limited capacity. Further, the Evaluation indicates Plaintiff has the potential capacity to kneel, walk, or sit for a good portion of the day, although not an entire eight hour day.

As such, the Court is concerned that Defendant's decision to deny Plaintiff benefits was not the result of a deliberate, principled, reasoning process. The medical evidence appears to demonstrate that Plaintiff's abilities fall within the definition of partially disabled - "capable of performing the material duties of his/her regular occupation on a part-time basis or some of the material duties on a full-time basis." However, the record is devoid of any discussion or analysis by Defendant as to why, based on this medical evidence, Plaintiff was not partially disabled, and thus, totally disabled, as defined by the Plan. Therefore, Defendant's decision to terminate Plaintiff's long term disability benefits, without determining whether or not she is partially disabled, is arbitrary and capricious.

D.    Remedy

When faced with an arbitrary and capricious decision made by an insurance company, there are two different remedies available:  remand the case to the plan administrator for reconsideration or award benefits. *Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 622 (6th Cir. 2006). The Sixth Circuit holds that remand is appropriate when there is an issue with the soundness of the plan's decision making process. *Id.* (citing *Buffonge v. Prudential Ins. Co. of America*, 426 F.3d 20, 31 (1st Cir. 2005)). The retroactive reward of benefits is appropriate when a claimant is "denied benefits to which

she [i]s clearly entitled." *Pitts v. Prudential Ins. Co. of America*, 534 F.Supp.2d 779, 791 (S.D. Ohio 2008) (internal citations omitted).

As stated above, the medical evidence seems to demonstrate Plaintiff is partially disabled as defined by the Plan. However, the Court is not in a position to definitively determine whether or not Plaintiff is due long term disability benefits. *See Elliott*, 743 F.3d 613 (finding that the remand would allow the insurer to make an appropriate decision because the court was not qualified to make a medical determination). As such, the appropriate remedy is to remand the case to Defendant to determine whether or not Plaintiff is entitled to disability benefits due to partial disability.

## IV.    CONCLUSION

Accordingly, the October 22, 2008 Motion of Plaintiff for Judgment on the Administrative Record is **DENIED** and the October 22, 2008 Motion of Defendant for Summary Judgment is **DENIED**. This matter is hereby **REMANDED** to Defendant for review consistent with this Opinion.

**IT IS SO ORDERED.**

_____
Michael H. Watson, Judge
United States District Court