IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Teresa Combs,

        Plaintiff,

    v.                                 Case No. 2:08–cv–102

Reliance Standard Life Insurance          Judge Michael H. Watson
Company,                            Magistrate Judge Kemp

        Defendant.

## OPINION AND ORDER

Plaintiff Teresa Combs filed this civil action after defendant Reliance Standard Life Insurance Company ("Reliance") terminated her long-term disability benefits. Ms. Combs had worked for Taft, Stettinius & Hollister, a law firm, as a Personal Administrator, but stopped working on January 24, 2003, claiming that she was no longer able to do her job due to severe back pain. She began receiving disability benefits in 2003, but Reliance advised her in 2004 that it intended to terminate those benefits based on its belief that she was no longer disabled. After Ms. Combs appealed that decision, Reliance issued a final decision terminating benefits in 2006. The Court has jurisdiction to hear this case under provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§1001 et seq., and particularly 29 U.S.C. §1132(a)(1)(B).

After the administrative record and merits briefs were filed, in an Opinion and Order dated September 8, 2009, the Court remanded the matter for further administrative proceedings. Specifically, the Court expressed concern that "[Reliance's]

decision to deny Plaintiff benefits was not the result of a deliberate, principled reasoning process." Opinion and Order 9, ECF No. 19. The Court instructed Reliance to determine if Ms. Combs was partially disabled, which, if she were, would qualify her for benefits under the Plan's definition of disability.

Additional proceedings were held following the remand, but they did not result in a restoration of benefits. On August 19, 2011, at the parties' request, the Court reopened the case. Reliance filed a supplemental claim file and administrative record on September 8, 2011, and made another supplemental filing on December 15, 2011. The Court will refer to the three separate filings of the administrative record as "Record I," "Record II," and Record III." The parties then filed cross-motions for judgment on the administrative record, ECF Nos. 38 & 39, and each has filed a response to the other's motion for judgment, ECF Nos. 40 & 41. For the following reasons, the Court will grant Reliance's motion for judgment and dismiss this case.

## I. A PRELIMINARY LEGAL ISSUE

Before summarizing the facts on which the Court's decision will rest, it is necessary to resolve a preliminary legal issue raised by Ms. Combs. As noted, Reliance has twice supplemented the administrative record filed with this Court, and the contents of those supplemental filings include documents not available to Reliance—and not even in existence—at the time Reliance made its 2006 decision upholding the termination of Ms. Combs' benefits. In fact, after the Court remanded the case, Reliance requested additional reviews of the medical records and had Ms. Combs submit to a new examination. It relied on the results of those procedures in again affirming the termination of benefits. Ms. Combs claims that none of these new

documents can be taken into account by the Court, and that the proper scope of review is limited to determining whether, on the basis of the record as it existed in 2006, Reliance had a legally defensible basis for affirming the termination of her benefits.

Ms. Combs has not submitted any cases supporting her argument which are directly on point. Rather, she cites to more general authority which, like *Wilkins*, limits the Court's review to the administrative record and prohibit the consideration of extraneous evidence. *See, e.g., Hardt v. Reliance Standard Life Ins. Co.*, 130 S. Ct. 2149 (2010). Reliance, on the other hand, has cited to numerous district court decisions, including one from this district, which have considered materials added to the administrative record after remand. *See, e.g., Godden v. Long Term Disability Plan for Employees of Huntington Banc Shares*, No. 2:03–cv–1183, 2008 WL 687124 (S.D. Ohio March 10, 2008).

The general rule appears to be that unless an order of remand explicitly prohibits either party from supplementing the administrative record, such supplementation is permissible. *See Bishop v. Long Term Disability Income Plan of Sap America, Inc.*, No. 04–cv–31, 2008 WL 1944719 (N.D. Okla. May 1, 2008) (rejecting a claimant's argument that a remand order which was silent on the issue of supplementation should be read to have forbidden it). Often, a court will remand with explicit instructions to the parties to add to the record due to its incomplete nature or if the facts show a need for additional investigation or additional medical information. *See, e.g., Bullard v. Life Ins. Co. of North America*, No. H–10–735, 2011 WL 11202 (S.D. Tex. January 3, 2011). Although this Court's remand order did not specify the procedures to be followed on remand, it did express some concern about the absence of an independent medical

review, and, in noting that the record had not been definitively interpreted as to the issue of partial disability, the Court's order directed Reliance to "determine whether or not Plaintiff is entitled to disability benefits due to partial disability." That is fairly broad language, and is consistent with a remand process which would allow both Ms. Combs and Reliance to supplement the record—particularly, as to Reliance, to allow it to obtain the independent medical review which seemed to be absent from the record. It is worth noting that Ms. Combs also submitted a number of additional documents to Reliance following remand, including a favorable decision from the Social Security Administration and several new medical reports, suggesting that she did not read the Court's prior order as limiting Reliance's review to the then-existing record. For all of these reasons, the Court concludes that nothing in its prior order precluded either party from supplementing the prior administrative record, and that the case authority cited by Ms. Combs is properly followed if this Court confines its review to the administrative record existing at the time that Reliance made its decision following the remand order. That record is the entirety of the three filings made by Reliance, and the Court will therefore determine, on the basis of that record, if Reliance's decision was arbitrary and capricious.

## II. FACTS

All of the pertinent facts in this case appear in the administrative record. *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609, 615 (6th Cir. 1998). The Court will summarize the pertinent portions of that record—particularly the medical evidence and the final administrative decision—here. The relevant portions of the long-term disability plan under which Ms. Combs was first awarded, and then denied, benefits are set out in

Section IV below.

Although the administrative record is fairly voluminous, there are a subset of essential medical records which both parties discuss in detail in their memoranda. The Court will therefore focus on these records as being the most pertinent to its decision.

As noted above, Reliance's initial final decision upholding the termination of benefits was made on February 23, 2006. The denial letter (Record I, 1–7) referred to a number of doctors' reports, including notes from Drs. Brill, Bertani, Severyn, and Blood, and reports from the Mt. Carmel Health Systems Medical Center. It also relied heavily on a functional capacities evaluation done by Banyan Tree Rehab. Dr. Blood's report was summarized as restricting plaintiff, following her back surgery, to lifting 40 pounds maximum and 20 pounds occasionally, with no lifting below knee level, no work at dangerous heights, and no climbing of stairs. Reliance claimed that its vocational staff viewed these limitations as consistent with the work of a personal clerk or legal secretary, which are essentially sedentary jobs without heavy lifting requirements. It also discussed Dr. Brill's notes in detail, noting that he had apparently diagnosed fibromyalgia and was treating Ms. Combs with antidepressants for that condition as well as with narcotic pain medication, and that by May, 2005, she was having more good days than bad days. Finally, it reviewed the evaluation done by Banyan Tree Rehab on January 10 and 11, 2006, which required Ms. Combs to undergo two days of testing to determine her physical capabilities. That report indicated she could continuously grasp, reach above her waist, push, pull, and do fine manipulation; could frequently sit, walk, and crawl; could occasionally stand, squat and climb stairs; and could never climb ladders. She could also lift 20 pounds occasionally and ten pounds frequently. It then

reviewed various job descriptions from the *Dictionary of Occupational Titles* and referred to Ms. Combs' employer's description of her job duties, and advised Ms. Combs that an in-house vocational specialist had concluded that she could still do her past work even with the restrictions placed on her by Dr. Blood and by the functional capacity evaluation report. It was that decision which the Court determined was problematic due to the possibility that the functional capacity assessment supported only part-time work, and due to the absence of any truly independent medical or vocational review. It is worth noting that the original administrative file contains a large number of records from 2003 indicating severe back pain, but Ms. Combs underwent a spinal fusion on August 7, 2003, with (at least according to the medical records) good resolution of her pain within several months thereafter, so the issue regarding ongoing disability focused on consideration of her limitations post-surgery.

After remand, Reliance took the following actions. First, it sent Ms. Combs' records to Dr. Wagner for an independent review. Dr. Wagner is a specialist in physical medicine and rehabilitation. Dr. Wagner reviewed not only the pre-2006 treatment records but additional treatment records submitted after that date. Second, it reviewed a favorable decision from the Social Security Administration awarding Ms. Combs disability benefits, a decision which Ms. Combs herself submitted to Reliance in December, 2009. After issuing a decision in January, 2010, again upholding the termination of disability benefits, Reliance considered additional evidence submitted by Ms. Combs, which included, most significantly, a report from Dr. Cunningham, who examined Ms. Combs on March 16, 2010. It then arranged to have Ms. Combs examined by Dr. Richardson, an independent physical medicine specialist. That

examination took place on July 27, 2010, but a second examination arranged by Reliance, with a psychologist, did not go forward because Ms. Combs (apparently on the advice of her attorney) declined to participate in that examination. Nevertheless, Reliance obtained an opinion as to any psychological or medication dependency issues from Dr. Gitlow, a psychiatrist. Ms. Combs then submitted additional evidence from another physician, Dr. Lingam, and a functional capacities evaluation report, both of which Reliance sent to another independent source, Dr. Hopkins, for review. Finally, Reliance submitted Dr. Hopkins' opinion as to Ms. Combs' physical capacities to a member of its vocational staff to determine if that report was consistent with Ms. Combs' being able to resume her prior occupation, at least before her eligibility for benefits under the Plan expired. All of these actions, as well as Reliance's ultimate conclusion that benefits were properly terminated, are described in a letter written by Gene Shaw, a senior benefit analyst, on July 21, 2011. *See* Record II, at 2–14. That letter constitutes Reliance's final decision after remand, and its sufficiency is the issue now before the Court.

The Court will summarize the medical reports chronologically, beginning with Dr. Wagner. She actually prepared two reports, one dated December 4, 2009, and the other dated December 17, 2009, and they are found at Record III, 357A-Q, and Record III, 327-31. The earlier report details the treatment Ms. Combs received for back pain since August, 1996, noting that her complaints of pain significantly increased in 2002 and that her diagnoses at that time included lumbar pain and fibromyalgia. The records also showed severe ongoing pain despite treatment with OxyContin and Vicodin. After surgery, a note of October, 2003 attributed her pain to fibromyalgia. She also

developed cervical pain and chronic headaches. She also experienced frequent falls. Dr. Gerwitz, the doctor who performed the surgery, was uncertain as to the etiology of Ms. Combs' continued pain, and a psychiatric consultation was recommended, as were pain management services. Dr. Wagner interpreted the 2006 functional capacity study as showing that Ms. Combs could do full-time work at the light exertional level. She diagnosed lumbar and cervical disc or spine disease, and status post lumbar laminectomy and fusion. She also thought it was difficult to state whether the ongoing use of opioids was for medical or non-medical reasons. Dr. Wagner expressed her agreement with the 2006 functional capacity study and thought that the only restrictions would be lifting of no more than 20 pounds occasionally or ten pounds frequently, without repetitive bending or twisting, and without climbing or exposure to heights. Record III, 357A-Q.

In her follow-up report, Dr. Wagner apparently reviewed both additional medical records and her prior report at Reliance's request. The additional medical reports dated from 2008 and 2009 and indicated a variety of additional problems including some hip and knee pain. Dr. Wagner thought these records showed "waxing and waning pain with medication management" as well as the continued use of narcotic analgesics, but that there was not really any new information. She did not express any changes in her opinion, again citing to the 2006 functional capacity study as a valid basis for concluding that Ms. Combs could do a relatively full range of light work. Record III, 327–31.

The next report, in date order, comes from Dr. Cunningham. He was retained by Ms. Combs' counsel to do an examination and medical records review, and he saw Ms.

Combs on March 16, 2010. According to the history he took, Ms. Combs had used either a walker or a cane since her 2003 surgery, and was on a variety of medications, including OxyContin, Celebrex, Flexeril, Prozac, Vicodin, and Trazodone. She was also being treated for hypertension, high cholesterol, and a thyroid disorder. Her pain had worsened in the past year. She was able to drive and to perform activities of daily living without assistance. She could sit for only 20–30 minutes at a time, lifted less than ten pounds, and avoided bending, twisting, and climbing stairs.

The physical exam showed no evidence of muscle atrophy and sensory examination of the legs was normal. Straight leg raising was positive for back pain at 70 degrees. She walked with a wide-based gait and had some tenderness and limitation of motion in the low back.

Dr. Cunningham did not have Dr. Wagner's report to review, but he did have Reliance's initial denial letter based on that report. He criticized the denial letter as not accounting for Ms. Combs' level of pain or her use of a cane, or her inability to sit for more than 15–20 minutes at a time. He thought the denial was based solely on physical examination findings and not consideration of additional factors—primarily pain and its associated limitations, as well as Ms. Combs medication regime—and he described the evaluator's conclusion as "beyond all reasonable logic and thought." He did not believe she was ever able to resume working following her 2003 surgery. Record II, 165–68.

In response to this report, Reliance obtained its own independent medical examination, which was performed by Dr. Richardson on July 27, 2010. The history which Ms. Combs reported to Dr. Richardson was similar to that reported to Dr.

Cunningham, although she elaborated on her reasons for being unable to return to work, stating that she could hardly walk and that although her job gave her some flexibility to stand and walk, she could not lie down. Her low back pain was both constant and severe; lying down helped, and activities made it worse. She had employed a housekeeper since the surgery to do indoor chores. She would sit or stand at 45-minute intervals throughout the day, and could attend a 45-minute church service by alternating sitting and standing.

On physical examination, Ms. Combs demonstrated pain in ten of eighteen fibromylagia trigger points. She had pain in her neck and shoulders as well as her low back, but straight leg raising was negative for radiation. She stood with a cane and with 15 degrees of flexion. Her lumbar range of motion was fairly restricted.

Dr. Richardson reviewed extensive prior medical records, much as the other reviewing physicians had done, and concluded that Ms. Combs suffered from depression, fibromyalgia, nicotine addiction, being overweight, lumbar degenerative disc disease with chronic low back pain, bilateral anterior leg pain of unclear etiology, neck pain, and pain down her entire spine. Ms. Combs displayed "symptom magnification" during the examination and was sometimes hesitant in answering questions. Many of her complaints did not correlate to any physical findings. Dr. Richardson flagged narcotic dependence and depression as significant factors, and concluded that Ms. Combs' "disability" (apparently a reference to her claimed level of disability) "far outweighs her impairment." Dr. Richardson thought that evaluation by a psychiatrist was warranted, and also thought that prognosis from a physical standpoint was "very good." She believed that Ms. Combs could work on a full-time basis as a

personal manager given the demands of those jobs. Record II, 16–33.

Based on this report, Reliance attempted to set up an independent psychiatric examination, but, as noted above, Ms. Combs declined to participate. Nonetheless, Reliance obtained an opinion from Dr. Gitlow on October 4, 2010. His review was limited to the medical file. Based on that review, he concluded that Ms. Combs had a documented diagnosis of depression since 2004 but her condition was stable and that she had neither sought nor received psychiatric treatment. He also thought there was no evidence of narcotic dependence, although Ms. Combs, like anyone who had been treated with opioid medications over a long period of time, would have a physiologic dependence. He did not see any areas of functional limitation due either to narcotic use or depression. Record II, 35–38.

Next, Ms. Combs' attorney arranged for an independent functional capacity assessment, performed by WorkLife on January 14, 2011. The summary section of the report concluded that her effort was good although there were some clinical inconsistencies in her presentation, but that did not indicate an intent to perform poorly; rather, it showed that she might be more physically capable than demonstrated during the testing. Her report of symptoms and functional deficits was described as "extreme" and some caution was advised in relying solely upon her subjective reports. Testing showed full range of motion and normal muscle strength in the upper extremities but there were limits in lumbar flexion and extension. She walked with a cane but showed no loss of balance or sidestepping. She alternated sitting and standing at 30-minute intervals. Ms. Combs was able to do sedentary physical activities with some limits on activity below waist level, but she showed symptom progression during the evaluation.

Although her performance generally matched the demands of her prior job, the evaluator expressed some doubt about her ability to withstand the stress of a work environment on a sustained basis, but she could probably work part-time in a sedentary job with reduced demands and which did not involve fast-paced work or high productivity. Record II, 177–203.

The next-to-last medical report is a one-page letter from Dr. Lingam, who treated Ms. Combs in 2010. Dr. Lingam reported that Ms. Combs had multiple pain conditions and that she lived with a significant amount of pain on a daily basis. The pain was chronic, and Dr. Lingam said that such pain "can be debilitating," although she did not state specifically that such was the case with regard to Ms. Combs. Record II, 176.

Finally, Reliance sent Ms. Combs' file to Dr. Hopkins for one last review. Her summary of the medical records was consistent with the summaries of other reviewers, and she clearly had access to the entire file, including the most recent functional capacity evaluation. Dr. Hopkins noted that there were no treatment records from August 24, 2005 to July 18, 2008, and it was difficult to assess her condition during that time. She did note the presence of hip pain and decreased functioning of the legs beginning in 2008, as well as more neck and upper back symptoms, and thought that the conclusions from the January 14, 2011 functional capacity evaluation might be valid back to September of 2008, but not before. She concluded that between 2004 and 2008, Ms. Combs could lift at the light level or slightly above, could sit frequently, stand occasionally, walk frequently at a self-determined pace and with an assistive device, and perform continuous upper extremity use. She did not impose a 30-minute sitting restriction until 2008. Record II, 48–54.

The final determination upholding the termination of disability benefits is contained in a letter dated July 21, 2011. The letter, which is fourteen pages in length, contains the following significant conclusions. First, it discounted Dr. Cunningham's report to some extent because Dr. Cunningham did not evaluate Ms. Combs until 2010, and because he did not take into account Ms. Combs' ability to sit long enough to fly to Europe in 2004. However, it went on to note that in order to obtain a more complete picture of Ms. Combs' condition, Reliance obtained evidence from Drs. Richardson and Gitlow, and found Dr. Richardson's statements concerning the inconsistencies between her findings and Ms. Combs' report of symptoms to be significant. Reliance viewed Dr. Richardson's report as confirmation of the earlier functional capacity assessment. After Ms. Combs produced her own independent functional capacity report, Reliance asked Dr. Hopkins to do another file review, and it clearly relied on her findings as to Ms. Combs' physical abilities through September, 2008. It was this assessment which was presented to Reliance's vocational staff, and the result of that review was the conclusion that Ms. Combs could have gone back to her regular job in 2004. Reliance noted that if Ms. Combs were indeed disabled as of September, 2008, that would fall outside the policy provisions for eligibility for benefits. Finally, Reliance acknowledged the favorable decision from the Social Security Administration, but noted that the policy and the Social Security Act contain different standards for evaluating disability, and that the Social Security Administration did not have the benefit of the opinions rendered by Drs. Richardson, Gitlow, and Hopkins. The letter concluded by noting that since the Social Security award was retroactive to July 1, 2003, Reliance had actually overpaid Ms. Combs by some $10,379.00, and that she was required to reimburse Reliance in

this amount.

## III. STANDARD OF REVIEW

This Court has previously articulated the standard of review which it uses in cases involving either the denial or termination of ERISA benefits. As the Court said in *Walborn v. Aetna Life Ins. Co.*, No. 2:09–cv–532, 2010 WL 3672332, *2–3 (S.D. Ohio September 17, 2010),

> District courts review a plan administrator's denial of ERISA benefits de novo, unless as is the case here, the benefit plan gives the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609, 613 (6th Cir.1998) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)); *see also Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 456 (6th Cir. 2003). When the fiduciary-in this case, Aetna-has such discretionary authority, its decision is reviewed under the "highly deferential" arbitrary and capricious standard. *Sanford v. Harvard Indus.*, 262 F.3d 590, 595 (6th Cir. 2001) (citing *Yeager v. Reliance Std. Life Ins. Co.*, 88 F.3d 376, 380 (6th Cir. 1996)). So long as the fiduciary's decision was "rational in light of the plan's provisions", courts must uphold the denial of benefits when applying the arbitrary and capricious standard. *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 169 (6th Cir. 2003) (citing *Williams v. Int'l Paper Co.*, 227 F.3d 706, 712 (6th Cir. 2000)). In other words, "when it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Id.*
>
> * * *
>
> [H]owever, an additional element of the arbitrary and capricious standard of review is that an actual conflict of interest exists where the entity adjudicating the claim is also the entity responsible for paying the benefits. *Killian v. Healthsources Provident Administrators, Inc.*, 152 F.3d 514, 521 (6th Cir. 1998). This conflict does not, however, alter the standard of review. Instead, it becomes another factor in analyzing whether the plan administrator's decision was arbitrary and capricious. *See Firestone Tire & Rubber*, 489 U.S. at 115.

Here, the applicable plan language comes from the section of the Plan entitled "Claims Provisions" which is found at page 206 of the initially-filed administrative record

(Record I). In the fourth paragraph under the heading "**PAYMENT OF CLAIMS**," the plan provides as follows:

> Reliance Standard Life Insurance Company shall serve as the claims review fiduciary with respect to the insurance policy and the Plan. The claims review fiduciary has the discretionary authority to interpret the Plan and the insurance policy and to determine eligibility for benefits. Decisions by the claims review fiduciary shall be complete, final and binding on all parties.

Record I, 206.

Reliance argues that this language confers broad discretion on the Plan Administrator to make benefit decisions and that it is legally sufficient to limit the Court's review of benefit decisions to whether they are "arbitrary and capricious." Ms. Combs' current motion and response do not specifically dispute this argument. Other courts construing the same or similar language from a Reliance plan have used the "arbitrary and capricious" standard of review. *See, e.g., Gravalin v. Reliance Standard Life Ins.*, 592 F. Supp. 2d 1184, 1189–90 (D.N.D. 2009); *Dreznin v. Reliance Standard Life Ins. Co.*, 400 F. Supp. 2d 336, 341 (D. Mass. 2005). The Court agrees that this language confers sufficiently broad discretion on Reliance in its determination of eligibility for plan benefits. Therefore, the Court will review Reliance's decision in this case under the "arbitrary and capricious" standard.

## IV. DISCUSSION

Ms. Combs was initially awarded long-term disability benefits effective July 24, 2003. The Plan, one version of which appears beginning at Record I, page 195, defines "Total Disability" in the following way:

> "Totally Disabled" and "Total Disability" mean, with respect to Class 1, that as a result of an Injury or Sickness:

(1) during the Elimination Period and the first 24 months for which a monthly benefit is payable, an Insured is not capable of performing the material duties of his/her regular occupation;

> (a) "Partially Disabled" and "Partial Disability" mean that as a result of an Injury or Sickness an Insured is capable of performing the material duties of his/her regular occupation on a part-time basis or some of the material duties on a full-time basis. An Insured who is Partially Disabled will be considered Totally Disabled, except during the Elimination Period;

> (b) "Residual Disability" means being Partially Disabled during the Elimination Period. Residual Disability will be considered Total Disability; and

(2) After a Monthly Benefit has been paid for 36 months, an Insured cannot perform the material duties of any occupation. Any occupation is one that the Insured's education, training or experience will reasonably allow. We consider the Insured "Totally Disabled" if due to an Injury or Sickness he or she is capable of only performing the material duties on a part-time basis or part of the material duties on a full-time basis.

Record I, 202. Her benefits were terminated based on Reliance's determination that, as of September 24, 2004, she no longer met this definition because she was "physically capable of performing her own sedentary/light occupation . . . ." Decision letter of February 23, 2006, 6, Record I. The Court must determine if, in light of the record as summarized above, this was arbitrary and capricious.

Ms. Combs has argued this issue based both upon the administrative record as it existed on February 23, 2006—the date when she contends the record should have been closed—and based on the administrative record as it currently stands. Because the Court has determined that it may consider the entire administrative record, including the materials submitted by both Ms. Combs and by Reliance after the prior remand, the Court will focus on her argument that the record, in its entirety, does not support

Reliance's decision even under the arbitrary and capricious standard of review.

Ms. Combs acknowledges that the file contains several medical opinions which are inconsistent with either total or partial disability. As to Dr. Richardson, Ms. Combs claims that she is an "outlier," *i.e.* someone whose findings conflict with all other medical opinions in the file, and that she "is what insurers look for and find on the 'bought' market for physicians doing work for insurers." Combs Motion for Judgment 12, ECF No. 39. She characterizes Dr. Hopkins' views as speculative and as not accounting for her pain, and also criticizes the foundation for Dr. Hopkins' opinion as being a physical capacities evaluation done not by an independent source but by Reliance itself—stating in so many words that Dr. Hopkins was deceived into thinking that the evaluation was independent and therefore reliable. Ms. Combs also claims that reliance on the opinion of a non-examining physician about a claimant's credibility is unreasonable, and that the Court should disregard Dr. Wagner's opinion because one of her two opinion letters is not in the file (although it clearly appears to be part of the administrative record reviewed by the Court). Finally, she appears to argue that Reliance was obliged to accept the favorable reports from Dr. Cunningham and the Social Security Administration as well as the conclusions reached during the January, 2011 functional capacity evaluation. In her reply, she stresses Reliance's alleged disregard of opinions from treating sources and its supposed disregard of her subjective complaint of pain.

In *Black & Decker Disability Plan v. Nord*, 538 U.S. 822 (2003), the Supreme Court of the United States made it clear that the "treating physician" rule does not apply to ERISA disability cases in the same way as it does in Social Security cases. As the

Court explained,

> Nothing in the Act [ERISA] itself, however, suggests that plan administrators must accord special deference to the opinions of treating physicians. Nor does the Act impose a heightened burden of explanation on administrators when they reject a treating physician's opinion.

*Id.* at 831. The Court held that if this type of rule is to be applied in the ERISA context, it must come from either a legislative or administrative enactment and not from the judiciary's view of whether such a rule furthers the purposes of ERISA. However, the Court did not prohibit a reviewing court from applying the applicable standard of review to the way in which the plan administrator dealt with an opinion from a treating physician, noting that "[p]lan administrators, of course, may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." *Id.* at 834. *See also Evans v. UnumProvident Corp.*, 434 F.3d 866, 877 (6th Cir. 2006) ("a plan administrator may not arbitrarily disregard reliable medical evidence proffered by a claimant, including the opinions of a treating physician"); *Curry v. Eaton Corp.*, Nos. 08–5973, 08–6369, 2010 WL 3736277, *8 (6th Cir. Sept. 20, 2010) ("Giving greater weight to a non-treating physician's opinion for no apparent reason lends force to the conclusion that a plan administrator's decision is arbitrary and capricious").

   *Evans* is particularly helpful in determining when a plan administrator's disregard of the opinion of a treating physician can be considered arbitrary. The *Evans* court cited with approval several other decisions where that conclusion was reached. One situation is where the evidence from the treating physicians is strong and the opposing evidence is equivocal, at best, and also lacking in evidentiary support. *See McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003). Another is where

the contrary opinion of the non-treating physician was not based on an examination of the claimant and was supported only by a selective, rather than a fair, reading of the medical records. *See Moon v. Unum Provident Corp.*, 405 F.3d 373, 379 (6th Cir. 2005). Arbitrary decisions may also include ones which accept a file reviewer's disregard of subjective reports of symptoms based solely on a review of medical records which do not contain objective support for the claimant's complaints, *see Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 296 (6th Cir. 2005), and ones relying on an expert opinion that does not address crucial aspects of the claimant's former job and which is in conflict with other credible evidence in the record, including the opinion of the treating source. *See Kalish v. Liberty Mut./Liberty Life Assurance Co. of Boston*, 419 F.3d 501, 506 (6th Cir. 2005).

Here, the file does not contain an overwhelming number of opinions from treating sources, and those which are part of the record do not uniformly support Ms. Combs' claim for benefits. In fact, the initial 2006 denial was based in part on an opinion from Dr. Blood, who was a treating source, that Ms. Combs did not have disabling limitations. There are no records at all for a three-year period during which Ms. Combs' eligibility for benefits would have expired if she did not remain disabled after 2004. Her most recent treating source, Dr. Lingam, did not see Ms. Combs until 2010, expressed no view on her condition in 2004, and stated in general terms that pain can be debilitating, but did not expressly conclude that such was the case with respect to Ms. Combs. Dr. Cunningham, who perhaps expressed the most ardent view favoring a finding of disability, was not a treating source and examined her only once. Thus, this case does not present the classic situation where the evidence from treating and non-treating

sources stands in direct conflict, and Ms. Combs' memoranda do not indicate which of the treating sources she claims Reliance should have found to be more credible than the independent reviewers who found that she was not disabled. On the basis of the current administrative record, the Court finds nothing arbitrary or capricious in the way in which Reliance dealt with the relatively scant amount of evidence submitted from treating health care providers.

The second discrete issue raised by Ms. Combs, apart from her general criticisms of the doctors whose opinions Reliance chose to credit, is how Reliance dealt with her subjective report of disabling symptoms. Many times, the extent of a claimant's pain is not directly ascertainable from the objective medical evidence, such as the results of x-rays, MRIs, CT scans, or EMGs. Again, in the social security disability context, the case law and regulations set out a systematic way of addressing this issue. There, a two-step inquiry is required. First, does the claimant have a medical condition which is capable of causing the symptoms being reported? Second, if so, is there other evidence, including the claimant's daily activities, the duration, frequency, and intensity of the symptoms, precipitating and aggravating factors, medication (including side effects), treatment or therapy, or any other pertinent factors which either supports or detracts from the claimant's subjective complaints? *See Duncan v. Secretary of H.H.S.*, 801 F.2d 847, 853 (6th Cir. 1986); 20 C.F.R. §404.1529. These concepts, while not directly applicable to ERISA cases, are useful in examining the reasons why a plan administrator may have rejected a claimant's subjective complaints of pain and whether those reasons are arbitrary.

In a case such as this, a large part of the discrepancy between the views of

physicians who conclude that a claimant is disabled and those who do not relates to the amount of pain that each physician believes the claimant to be experiencing. It is true, of course, that "subjective complaints of back pain by themselves do not compel an administrator to grant disability benefits." *Cooper v. Life Ins. Co. of North America*, 486 F.3d 157, 174 (6th Cir. 2007) (Sutton, J., concurring in part and dissenting in part), *citing, inter alia, Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 382 (6th Cir. 1996). Judge Sutton also pointed out, however, that a plan administrator's failure to use a "'deliberate, principled reasoning process'" in such cases, which necessarily includes dealing with the difficult issue of how the objective medical evidence relates to the subjective report of disabling symptoms, usually leads to the conclusion that the decision under review was reached in an arbitrary manner. *See id., quoting Baker v. United Mine Workers of Am. Health & Ret. Funds,* 929 F.2d 1140, 1144 (6th Cir. 1991).

Especially when an issue exists as to the credibility of a claimant's subjectively-reported symptoms, the plan must follow reasonable procedures in deciding that issue. So, for example, "credibility determinations made without the benefit of a physical examination support a conclusion that the decision was arbitrary." *Helfman v. GE Group Life Assur. Co.*, 573 F.3d 383, 395–96 (6th Cir. 2009); *see also Calvert v. Firstar Fin., Inc.*, 409 F.3d at 296–97 (conclusion that a claimant had subjectively exaggerated her symptoms was "incredible on [its] face" when physician reaching that conclusion never examined the claimant). This is particularly true when there is, in fact, objective medical evidence of the underlying condition which forms part of the basis of an opinion that a claimant is disabled due to pain, and the plan administrator performs a selective,

rather than comprehensive, review of the records in reaching the opposite conclusion. *See, e.g. Ebert v. Reliance Standard Life Ins. Co.*, 171 F. Supp. 2d 726, 739–40 (S.D. Ohio 2010) (where the record contained evidence of physical conditions which could reasonably cause pain, it was a "complete misreading of the medical records . . . to say that Plaintiff's complaints of pain or weakness . . . are subjective and unverifiable").

None of the hallmarks of an arbitrary decision are present on this record. Rather, Reliance appears to have gone to great lengths in determining how Ms. Combs' subjective reports of pain factored into the determination of her functional capacity. It considered two functional capacity evaluations, and asked the reviewing physicians to do a similar assessment of function, while never dictating to those physicians how pain was to be accounted for. Further, it is clear that the reviewing physicians did take Ms. Combs' self-reports of disabling pain into account, and they provided various reasons for discounting her reports, at least to the extent that she considered herself unable to perform even sedentary work which provided her with a sit-stand option. The plan administrator placed heavy reliance on Dr. Richardson's conclusion that Ms. Combs reported physical complaints which were not only out of proportion to the physical findings made, but which were inconsistent with certain observations made by Dr. Richardson during an actual physical examination. Far from ignoring Ms. Combs' reports of pain, Reliance specifically referred to them and cited to evidence which, if given credibility, found them to be less than reliable indicators of her ability to function at the sedentary work level.

The record also shows that Reliance attempted to determine if there was either a psychological basis for some of Ms. Combs' physical complaints, or a medication

dependence issue, but was unsuccessful in arranging for an independent psychological examination. Nevertheless, it did obtain an opinion on those issues, and there is no countervailing evidence in the record which would suggest that Dr. Gitlow's report was not accurate. Finally, it asked for a comprehensive review of the records after Ms. Combs submitted additional evidence of a reduced functional capacity, and relied on Dr. Hopkins' disagreement with that assessment in determining that, at least as of the date that benefits were terminated, Ms. Combs could still do sedentary work. It is worthwhile noting that even the 2011 functional capacity report did not find Ms. Combs to be physically unable to do the various tasks associated with sedentary work, but rather concluded that she would probably not be able to sustain that level of activity for a full work week due to the stress associated with doing so. The fact that even that report, made over six years after the termination of benefits, and after Ms. Combs had been out of the work force for eight years, provided only equivocal support for a finding of disability is additional evidence that Reliance did not act arbitrarily in arriving at a slightly more favorable view of Ms. Combs' ability to function. In short, there is nothing about either the process which Reliance followed, or the reasoning it used to reach its decision, that evidences a flawed process, the selective review of evidence, or reliance on evidence of questionable validity—factors which, if present, might support the conclusion that Reliance's decision was arbitrary and capricious, but none of which are present in this record.

A few additional points are in order. First, Ms. Combs' allegations that the opinions of independent reviewers like Dr. Richardson and Dr. Hopkins could be "bought" on the open market by an insurer wishing to obtain a report in its favor are just

that—allegations—which have no support on this record, and which the Court has given no weight. Second, Reliance's request for an order that Ms. Combs reimburse it for having overpaid her once she obtained Social Security disability benefits appears nowhere in the pleadings. Such a claim for relief is in the nature of a counterclaim and, to be properly before the Court, must be pleaded in that fashion. That is the usual course of action in this type of case. *See, e.g., Gilchrest v. Unum Life Ins. Co. of America*, 255 F. App'x 38 (6th Cir. Oct. 17, 2007). Reliance could have asked for leave to amend its answer to include this claim, but never did. Therefore, the Court has no basis for awarding relief on this claim.

## V. DISPOSITION

Based on the above, the Court **DENIES** Ms. Combs' motion for judgment as a matter of law, ECF No. 39, and **GRANTS** Reliance's motion for judgment as a matter of law, ECF No. 38. This case is **DISMISSED WITH PREJUDICE**. The Clerk shall enter judgment in favor of the defendant.

**IT IS SO ORDERED.**

_____
**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**